IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


KENNY W. HEISTAND,

                    Plaintiff,

          v.                         CASE NO.  08-3292-SAC

HAROLD COLEMAN,
et al.,

                    Defendants.

## O R D E R

This civil rights complaint was filed by an inmate of the Bourbon County Jail in Fort Scott, Kansas.  Named as defendants are Bourbon County, Kansas; Harold Coleman, Bourbon County Sheriff and Administrator of the Bourbon County Jail; Darrell Spencer, Director of Security at the jail; and  Jimmy Nichols, Programs Director at the jail.  Plaintiff sues defendants in both their official and individual capacities.  Plaintiff generally asserts that his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights are being violated.


**FACTUAL BACKGROUND**

As the factual basis for this complaint, Mr. Heistand alleges the following.  He was convicted in December, 2005, and received a sentence of 39 months for trafficking contraband in the Bourbon County Jail (Bourbon Co. Dist. Ct. Case No. 05-CR-130).  He was released on his 2005 sentence, but was returned to the Bourbon County Jail "on a detainer" in December 2007, while his appeal of

1

his 2005 conviction was still pending.  He is also a pretrial detainee.

When plaintiff arrived at the Bourbon County Jail in December, 2007, he was "ordered to punitive segregation by" defendants Coleman, Nichols and Spencer.  He was "threatened by" defendant Nichols with "more criminal charges" or being "farmed out," and told not to file any grievance or court action, or to help other inmates with grievances.  Plaintiff ignored the threats, and filed grievances about his placement in segregation and the threats by Nichols.  Plaintiff was "farmed out" to Erie, Kansas, in December 2007, far away from his attorney and his family.  He was sent even farther away to Columbus, Kansas, in January 2008; and in April, 2008, he was sent to Oswego.  He was returned to Bourbon County Jail in May, 2008.

Upon his return to the jail in 2008, he was placed in punitive segregation by correctional officers Rich and Probasco per orders of defendants Coleman, Nichols, and Spencer.  He was briefly let out of punitive segregation, but was placed there again without due process.

Plaintiff's "legal papers" were confiscated upon this return, and twice in July 2008.  In June and July 2008, his legal papers were returned in "total disarray" with some files missing.

In September 2007, attorney Ballweg mailed plaintiff's legal file in Bourbon County Case No. 05-CR-71, 07-CV-57 to plaintiff. This mail was opened by defendants outside plaintiff's presence and held for two to three weeks before it was given to plaintiff.  In

2

summer 2008, plaintiff's legal file and transcripts in Case No. 05-CR-130 (jail trafficking case) were mailed, and they were opened and held for ten days before a trace and call to the jail by the sender resulted in plaintiff receiving these papers.  On October 2, 2008, the jail received his legal files in Case No. 05-CR-71, a "pending criminal matter" and 07-CV-57 from attorney Kirk.  Defendants signed for these papers, opened this legal mail outside Heistand's presence, and "did not tell plaintiff for several weeks they had his files."

Plaintiff further alleges that the Bourbon County Jail does not provide a law library, and his personal law books were confiscated and not returned.  He claims that defendants' "non-existent law library policy and practices" are preventing him from filing "his appeal via writ of habeas corpus" and that he has a "limited time" in which to file "his appeal" or it will be time barred.  He further claims he has been prevented from filing "a habeas corpus challenging his placement in punitive segregation," and from filing the instant civil rights action "correctly."  He asserts that defendants are "intentionally blocking his access to the courts."

Plaintiff also makes the conclusory claims that defendants "have an interest" in these cases, confiscate items of incoming mail and do not give him notice or an opportunity to appeal, monitor his legal calls and visits with his attorney, and he has been harassed.

Plaintiff alleges that he has filed "numerous grievances" to no avail.

In his complaint, Mr. Heistand seeks a "preliminary and

3

permanent injunction" ordering defendants to: grant him access to "a law library," stop opening his legal mail outside his presence, stop seizing his legal mail, stop monitoring his attorney's calls and visits, release him from punitive segregation, and stop harassing and retaliating against him for filing grievances and legal actions[1]. He also seeks compensatory and punitive damages.

## MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES

Plaintiff has filed a motion to proceed without prepayment of fees (Doc. 2). He attached to this motion a response on his Inmate Request Form indicating "the total amount of money that has been deposited" in his inmate account "in the last six months" is $988.00. Plaintiff is reminded that under the Prison Litigation Reform Act a prisoner litigant is required to pay the full district court filing fee of $350.00 for each civil action filed by him. 28 U.S.C. § 1915(b)(1). The granting of leave merely entitles him to pay the filing fee over time with periodic payments from his inmate trust fund account as detailed in 28 U.S.C. § 1915(b)(2). Plaintiff was granted leave to proceed without prepayment of fees in a prior action and has an outstanding fee obligation of $239.00 in that action, <u>Heistand v. Coleman</u>, Case No. 05-3132 (Aug. 30, 2006). Because any funds advanced to the court by plaintiff or on his behalf must first be applied to plaintiff's outstanding fee

---

[1]     Contrary to his answer to questions in his form complaint, Mr. Heistand has filed a prior civil action, and in that action he also alleged denial of his right of access to the courts while confined at the Bourbon County Jail. In the prior action, he was informed of the legal standards for such a claim.

obligations, the court grants plaintiff leave to proceed without prepayment of fees in the instant matter. Collection of the full district court filing fee in this case shall begin upon plaintiff's satisfaction of his prior obligation in Case No. 05-3132. The finance office of the facility where plaintiff is currently incarcerated is directed by a copy of this order to collect from plaintiff's account and pay to the clerk of this court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until all plaintiff's outstanding filing fee obligations have been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion for appointment of counsel (Doc. 3). Having considered the motion, the court finds it should be denied. There is no right to appointment of counsel in a civil rights action seeking injunctive and monetary relief. Durre v. Dempsey, 869 F.2d 543, 547 (10th Cir. 1989); Carper v. Deland, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991). In deciding whether to appoint counsel, the district court should

consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." <u>Rucks v. Boergermann</u>, 57 F.3d 978, 979 (10th Cir. 1995); <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1115 (10th Cir. 2004). Considering the above factors, the Court concludes in this case that (1) it is not clear at this juncture that plaintiff has asserted a colorable claim; (2) the issues are not complex; and (3) plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court denies plaintiff's motion for appointed counsel at this juncture, without prejudice.


**<u>SCREENING</u>**

Because Mr. Heistand is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds that a responsive pleading is required.


**<u>CLAIM OF DENIAL OF ACCESS</u>**

Plaintiff's allegations that he was threatened and told not to file legal actions, held in punitive segregation and "farmed out" to prevent and punish him for legal activity, and that his legal papers and law books have been confiscated while he is denied any access to

a law library are considered a claim of denial of access to the courts. In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court recognized that inmates have a well-established constitutional right of access to the courts and that the State must affirmatively assure that inmates are provided "meaningful access to the courts." Id. at 821, 824. The Court recognized that its decision "does not foreclose alternative means to achieve that goal," which may be fulfilled by providing prisoners "with adequate law libraries or adequate assistance from persons trained in the law" to ensure prisoners have "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." Id. at 825, 828, 830. Because there is no "abstract, freestanding right to a law library or legal assistance," an inmate alleging a denial of his right of access to the courts must show actual injury, and "an inmate cannot establish relevant actual injury simply by establish this his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996). "Conclusory allegations of injury in this respect will not suffice." Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006)(citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)). Instead, an inmate must show that deficiencies in the law library or legal assistance program have resulted in adverse consequences by frustrating, impeding, or hindering "his efforts to pursue a legal claim." Simkins v. Bruce, 406 F.3d 1239, 1243 (10th Cir. 2005)(quoting Lewis, 513 U.S. at 351-53 and FN 3).

Plaintiff alleges that defendants "are preventing him from

filing" the instant civil rights action "correctly," a "habeas corpus challenging his placement in punitive segregation," and "his appeal via writ of habeas corpus." His conclusory statement that he has been prevented from "correctly" filing the instant action is completely refuted by his filings in this case showing he properly completed and submitted this civil rights complaint on forms provided by the court; included attachments to his complaint; filed a form motion for leave to proceed in forma pauperis with supporting documents; filed exhibits in support of his motion for appointment of counsel; and filed a declaration in support of his request for preliminary injunctive relief as well as a proposed order. Plaintiff, if anything, has managed to file more than what was necessary to initiate this action. It follows that his allegations regarding the instant action in no way support his claim of a denial of access.

Plaintiff provides no reason why he is unable to file an action challenging his placement in punitive segregation. Presuming he knows the facts underlying this claim, and given that the state and federal courts provide forms upon request, he should be able to submit a complaint or petition to a court setting forth those facts.

Plaintiff's allegations that he "has a criminal appeal" citing Case No. 05-CR-130, and "is being prevented from filing a writ of habeas corpus" are unclear. On-line records of the Kansas appellate courts indicate that plaintiff's direct criminal appeal in Case No. 05-CR-130 ended on February 12, 2008, with the denial of his Petition for Review by the Kansas Supreme Court. Thus, plaintiff

does not have a direct criminal "appeal" pending in 05-CR-130. Instead, he must be incorrectly referring to a state habeas action as an "appeal," which is a common error[2]. Mr. Heistand provides no reason why he cannot file a state habeas action, such as a post-conviction motion under K.S.A. § 60-1507, on forms requested from the trial court. Plaintiff is obviously capable of preparing and filing motions and pleadings in a court case that set forth the facts and arguments underlying his claims. Furthermore, he should be well aware of the facts underlying any challenges he has to his state convictions since he has already directly appealed, and was represented by counsel during that appeal. Pro se litigants are mainly expected to set forth the facts underlying their claims, and may not need to conduct any legal research to file an acceptable petition. Mr. Heistand does not allege that he has obtained forms for filing a state post-conviction motion, but has been prevented from completing or mailing the forms due to interference by defendants, or that he has submitted any pleading to the state district court, which was rejected as a result of some improper action by defendants.

The court has discussed the deficiencies in plaintiff's allegations regarding actual injury in such detail mainly to impress upon Mr. Heistand that he remains responsible for taking all steps necessary to fully and properly present any challenges he has to any

---

[2]    If he means he is attempting to appeal the denial of a 60-1507 type motion that was already filed and denied by the state district court, then he provides no reason why he is unable to file a timely Notice of Appeal in the Kansas Court of Appeals.

of his state convictions in the state courts. Conclusory allegations of interference by jail officials will not suffice if he later tries to bring claims in federal court without having fully exhausted state remedies or after having procedurally defaulted his claims in state court. Moreover, if he actually encounters any difficulty in submitting a document on time in a state court case, he must bring that fact to the attention of the court in which he is attempting to file the document. For example, he could file a motion in that court for an extension of time or to file the document out of time.

That said, taking all plaintiff's factual, as opposed to his conclusory, allegations as true, this court cannot conclude at this screening stage, that plaintiff can prove no set of facts that would entitle him to relief. It follows that summons shall issue on this claim. At the same time, the court reiterates that in order for plaintiff to be entitled to any relief, he will eventually need to prove actual injury, i.e., that he was impeded in the litigation of a non-frivolous case by acts of defendants.

**CLAIM OF SEGREGATION WITHOUT DUE PROCESS**

Plaintiff's allegations that he has been placed and held in segregation at the jail and "farmed out" in retaliation for filing grievances and legal actions and to deny him access to the courts, are sufficient to require a responsive pleading. Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts. Smith v.

10

Maschner, 899 F.2d 940, 947 (10th Cir. 1990).  However, plaintiff has no constitutional right to placement in any particular penal institution.  See Olim v. Wakinekona, 461 U.S. 238, 244-248 (1983); Meachum v. Fano, 427 U.S. 215, 225-228 (1976).  Nor does he have a federal constitutional right to procedural due process prior to being assigned to a more restrictive unit in a jail for other than punitive or improper purposes.  The court shall require an answer on this claim.


## CLAIMS OF IMPROPER HANDLING OF LEGAL MAIL AND INTERFERENCE WITH CONFIDENTIAL COMMUNICATION WITH COUNSEL

Plaintiff's allegations in support of these claims are sufficient to require a responsive pleading.


## MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

In his complaint, plaintiff seeks a preliminary injunction or temporary restraining order pursuant to Fed.R.Civ.P. Rule 65 "to secure access to the courts" and counsel.  In order to obtain a preliminary injunction, plaintiff has the burden of demonstrating the following: (1) irreparable injury to the movant if the preliminary injunction is denied; (2) a substantial likelihood of success on the merits of the case; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest. Salt Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1099 (10th Cir. 2003)(quoting Kikumura v. Hurley, 242 F.3d

950, 955 (10th Cir. 2001)).  In addition, the right to relief must be "clear and unequivocal" because "a preliminary injunction is an extraordinary remedy."  <u>See</u> <u>Schrier v. Univ. of Colo.</u>, 427 F.3d 1253, 1258 (10th Cir. 2005); <u>Nova Health Systems v. Edmondson</u>, 460 F.3d 1295, 1298 (10th Cir. 2006).

Having weighed these factors in light of plaintiff's allegations in the complaint and his declaration, the court finds plaintiff's motion for preliminary injunctive relief is not supported by adequate facts and should be denied at this time.  It is well-established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  <u>Dominion Video Satellite, Inc. v. Echostar Satellite Corp.</u>, 356 F.3d 1256, 1260 (10th Cir. 2004)(citations omitted).  Moreover, "[b]ecause the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held'," the Tenth Circuit Court of Appeals has "identified the following three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits."  <u>Schrier</u>, 427 F.3d at 1258-59 (citations omitted).  These "disfavored injunctions" are "more closely scrutinized to assure that the

exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Id. at 1259 (citing Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal, 389 F.3d 973, 977 (10th Cir. 2004)). Plaintiff seeks a preliminary injunction that would dramatically alter the status quo at the Bourbon County Jail. In addition, although a preliminary injunction would not afford plaintiff all the relief he could recover if successful at trial, it would provide the primary relief he is seeking. For these reasons, the injunctive relief sought by plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." Schrier, 427 F.3d at 1259, 1261. Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on the Tenth Circuit's modified-likelihood-of-success-on-the-merits standard. O Centro, 389 F.3d at 975-96.

Although plaintiff makes conclusory allegations of irreparable injury, he does not allege sufficient facts establishing this necessary factor. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical'." Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003)(*quoting* Wis. Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C.Cir. 1985)). The party seeking the preliminary injunction "must show that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief' to prevent irreparable harm." Id. (citation omitted).

13

The only irreparable harm specified by plaintiff is "if he fails to file his appeal in a certain amount of time he will be time barred."  However, this statement is misleading and speculative at best, and as the court has pointed out, plaintiff must seek an extension of time in the court in which he faces a time limitation. The court concludes that the allegations in the complaint and plaintiff's declaration are simply insufficient to show that irreparable harm will befall Mr. Heistand if he is not granted a preliminary injunction.  If plaintiff hereafter obtains additional evidence of irreparable harm that is not speculative, he may submit it with a new motion seeking preliminary relief.

Moreover, as noted, plaintiff has filed all of the necessary pleadings in this case and communicated with the Court through the mail.  These circumstances negate a finding of irreparable injury from either intentional denial of access or the alleged mishandling of his legal mail and materials.

In addition, the court at this juncture cannot find that plaintiff has shown "a substantial likelihood of prevailing on the merits."  Instead, the court has determined that some of plaintiff's allegations barely survive the standard for dismissal upon screening.  Summons shall issue in this case out of an abundance of caution.  However, plaintiff has been forewarned that in order to be entitled to relief he must prove the element of actual injury to an extent that goes beyond the allegations in his notice pleading, and that transfers to segregation and other jail facilities do not, without more, state a federal constitutional violation.

14

Finally, neither the balancing of plaintiff's rights against the public interest here nor the weighing of potential harms to both parties tips the scale in support of granting a preliminary injunction at this time.  Plaintiff makes no allegations regarding these factors.  Conflicting public interests are involved in conditions of confinement claims by inmates.  The public interest naturally favors the protection of an inmate's right of access to the courts, and to the extent jail employees may be shown to have no legitimate administrative purpose for interfering with that right, the public interest factor would favor granting an injunction.  On the other hand, there is also a strong, established public interest in affording great deference to jail officials in managing the day-to-day operations of a jail given the "unique nature, needs and concerns" in the prison or jail environment.  <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987)(running prison difficult undertaking that requires expertise, planning and commitment of resources, peculiarly within province of the legislative and executive branches of government).  The court finds that a change in the status quo would significantly impact and potentially harm defendants who seek to maintain order and control in the Bourbon County Jail, while the potential harm to plaintiff is not sufficiently developed to find it outweighs the potential damage to defendants were the Court to grant a preliminary injunction.

## <u>IMPROPER DEFENDANT</u>

The court also finds that defendant "Bourbon County, Kansas" is

15

not a "person" subject to suit within the language of 42 U.S.C. §
1983, and therefore is not a proper defendant in this civil rights
complaint.   Plaintiff does not allege a deprivation of any
constitutional right pursuant to a county policy or custom,
notwithstanding his broad allegation of a lack of policy for use of
a law library at the Bourbon County Jail.   See Monell v. Dept. of
Social Services, 436 U.S. 658, 694 (1978)(municipal entities liable
under § 1983 only "when execution of a government's policy or
custom, whether made by its lawmakers or by those whose edicts or
acts may fairly be said to represent official policy, inflicts the
injury that the government as an entity is responsible for under §
1983"); see also, Collins v. City of Harker Heights, 503 U.S. 115,
122 (1992)(government entity may not be held vicariously liable for
constitutional violations of its agents under theory of respondeat
superior).   Accordingly, the court finds that defendant "Bourbon
County, Kansas" must be dismissed from this action.

   In sum, the court finds that taking as true and liberally
construing all plaintiff's allegations, a responsive pleading is
required.


   **IT IS THEREFORE ORDERED** that plaintiff's Motion for Leave to
Proceed in forma pauperis (Doc. 2) is granted; plaintiff's Motion
for Appointment of Counsel (Doc. 3) is denied, without prejudice;
and plaintiff's request in his complaint for a preliminary
injunction is denied, without prejudice.

   **IT IS FURTHER ORDERED** that "Bourbon County, Kansas" is dismissed

16

as a defendant in this action.

**IT IS FURTHER ORDERED** that the clerk of the court shall prepare summons and waiver of service forms pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served on the remaining defendants by a United States Marshal or a Deputy Marshal at no cost to plaintiff absent a finding by the court that plaintiff is able to pay such costs.

**IT IS FURTHER ORDERED** that the screening process under 28 U.S.C. § 1915A having been completed, this matter is returned to the clerk of the court for random reassignment pursuant to D.Kan.R. 40.1.

Copies of this Order shall be transmitted to plaintiff, to defendants, to the County Counselor of Bourbon County, to the Attorney General for the State of Kansas, and to the Finance Officer at the institution where plaintiff is currently confined.

**IT IS SO ORDERED.**

**Dated this 31st day of December, 2008, at Topeka, Kansas.**

**s/Sam A. Crow**
**U. S. Senior District Judge**