# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNY W. HEISTAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | Case No. 08-3292-CM |
| HAROLD COLEMAN, DARRELL ) | |
| SPENCER, and JIMMY NICHOLS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff brings this civil rights action *pro se*, alleging that defendants—officials at the Bourbon County Jail in Fort Scott, Kansas—violated his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Specifically, plaintiff claims that defendants have denied him access to the courts, segregated him without due process, improperly handled his legal mail, and interfered with confidential communication with his counsel. Defendants filed a Motion for Judgment on the Pleadings (Doc. 23), arguing alternatively that plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel and that they are entitled to qualified immunity. For the following reasons, the court grants defendants' motion in part and denies it in part.

## I. Factual Background

The following facts are taken from plaintiff's complaint and documents of which the court takes judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Since 2005, plaintiff has been housed in the Southeast Kansas Regional Correctional Center in Bourbon County, Kansas for various periods of time. Currently, plaintiff is housed at the Sumner County Detention Center in Wellington, Kansas. Plaintiff has filed a number of lawsuits arising out of his confinement. The following chart summarizes the relevant lawsuits:

| **Date Filed** | **Case** | **Defendants** | **Relevant Claims** | **Disposition** |
|---|---|---|---|---|
| Mar. 23, 2005 | Fed. Case #1: No. 05-3132 | Harold Coleman<br>Darrell Spencer<br>Jimmy Nichols<br>Eula Crowder<br>Eugene Parker<br>John Doe | 1. Due process - segregation<br>2. Denial of access to the courts | Dismissed - failed to state a claim |
| Nov. 16, 2007 | State Case #1: 07-231 | Harold Coleman<br>Darrell Spencer<br>Paul Bollinger | 1. Due process - detox cell for punitive purposes<br>2. Prohibited plaintiff "access to the law library, the courts, and to worship" | Dismissed with prejudice - failed to give notice under K.S.A. 12-105b |
| Nov. 19, 2007 | State Case #2: Mandamus Action 07-232 | Bourbon County<br>Harold Coleman<br>Darrell Spencer | 1. Due process - detox cell for punitive purposes without hearing | Dismissed with prejudice - did not meet standards for mandamus and "plaintiff has no liberty interest in being released from the 'detox cell'" |
| June 2, 2008 | State Case #3: Mandamus Action 08-64 | Harold Coleman | 1. Due process - segregation since February 28, 2005<br>2. Denial of access to the courts - confiscation of "legal files, legal correspondence from attorneys, and law books" | Dismissed with prejudice - did not meet the standards for mandamus; "Plaintiff is not entitled to access to a law library"; and "Defendants' actions did not interfere with Plaintiff's right of access to the courts" |
| Dec. 2, 2008 | Fed. Case #2: No. 08-3292 *(present case)* | Harold Coleman<br>Darrell Spencer<br>Jimmy Nichols | 1. Denial of access to the courts<br>2. Due process - segregation and being "farmed out"<br>3. Improper handling of legal mail<br>4. Interference with confidential communication with counsel | |

In support of his claims in this case, plaintiff alleges that in September 2007, defendants

opened legal mail out of plaintiff's presence and held it for two to three weeks before giving it to plaintiff. Plaintiff alleges that all three defendants ordered him to punitive segregation in December 2007. Defendant Nichols warned plaintiff not to file grievances or court petitions and not to help any other inmates file them, or plaintiff would be "farmed out to Siberia someplace." Despite the warning, plaintiff filed grievances. He was then "farmed out" to Erie, Kansas in December, 2007; Columbus, Kansas in January 2008; and Oswego, Kansas in April 2008, before returning to Bourbon County in May 2008.

When plaintiff arrived back in Bourbon County in May 2008, officers seized his legal papers and law books and placed him in segregation per orders of defendants Coleman, Nichols, and Spencer. Plaintiff's papers were returned in June 2008, but his law books were not returned.

In June or July 2008, plaintiff was placed in protective custody. After plaintiff was found with contraband under his mattress, defendants took his legal papers again and returned him to segregation without due process. On July 28, 2008, defendants returned plaintiff's legal papers in disarray, but then seized them again the next day after plaintiff had organized them. Defendants returned the papers two days later in disarray again. In the summer of 2008, defendants received, opened, and held a legal file and transcripts for ten days before giving them to plaintiff. Again in October 2008, defendants opened legal mail outside of plaintiff's presence, and did not tell plaintiff for several weeks that they had his files.

Plaintiff claims that because defendants do not have a law library and/or legal assistance at the Bourbon County Jail, plaintiff cannot file habeas corpus actions, this § 1983 action, and a motion for injunctive relief. Plaintiff also claims that defendants monitor his conversations with his attorney on the phone and during visits. Finally, he claims that they confiscate plaintiff's mail without notice or opportunity to appeal.

## **II.** **Standard of Review**

The court reviews a Rule 12(c) motion for judgment on the pleadings under the same standards as a Rule 12(b)(6) motion to dismiss. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992) (citation omitted). The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). The court construes any reasonable inferences from these facts in favor of plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Where, as here, the plaintiff proceeds *pro se*, the court construes the *pro se* pleadings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's *pro se* status does not relieve him from complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a *pro se* litigant must follow the same rules of procedure as

other litigants).

## III. Discussion

Before discussing defendants' arguments for dismissal, a brief summary of plaintiff's claims may be helpful:

(1) Denial of access to the courts through the following actions:
    (a) December 2007 threat not to file legal actions;
    (b) "Farming out" in December 2007, January 2008, and April 2008;
    (c) Placement in segregation in December 2007, May 2008, and June or July 2008;
    (d) Confiscation of legal papers and law books in May 2008, June or July 2008, and July 29, 2008; and
    (e) Failing to provide a legal library and/or legal assistance;
(2) Denial of due process through the following actions:
    (a) Placement in segregation in December 2007, May 2008, and June or July 2008;
    (b) "Farming out" in December 2007, January 2008, and April 2008
(3) Improper handling of legal mail by opening mail outside of plaintiff's presence and holding it for several weeks in September 2007, Summer 2008, and October 2008; and
(4) Interference with confidential communication with counsel by monitoring plaintiff's conversations with his attorney on the phone and during visits.

### A. Claims Barred by Res Judicata and/or Collateral Estoppel

Defendants first argue that all of plaintiff's claims are barred by the doctrines of res judicata and/or collateral estoppel. Although the doctrines of res judicata and collateral estoppel operate in slightly different manners, both are based on the principle that final earlier judgments must be advanced and adhered to by subsequent courts. *Augustine v. Adams*, 88 F. Supp. 2d 1166, 1170 (D. Kan. 2000). Under res judicata, commonly referred to as claim preclusion, a final judgment on the merits precludes the parties or their privies from relitigating any claims that were or could have been raised in that action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Under collateral estoppel, also known as issue preclusion, a court's decision on an issue of fact or law that is necessary to its judgment precludes relitigation of the same issue in a different cause of action between the same

parties. *See Montana v. United States*, 440 U.S. 147, 153 (1979). This court analyzes the question under federal law. *Augustine*, 88 F. Supp. 2d at 1170.

### *1. Res Judicata*

For the doctrine of res judicata to apply, the following three conditions must be satisfied: (1) a final judgment on the merits must have been made in the prior action; (2) the parties must be identical or in privity; and (3) the suit must be based on the same cause of action. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (citing *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)).

First, all of the previous cases—with the possible exception of the case filed November 16, 2007 (State Case #1)—were finally adjudicated on the merits. The court need not resolve whether the dismissal under Kan. Stat. Ann. 12-105b was an adjudication on the merits, as it has no impact here.

Second, defendants in this case are in privity with one another as government employees. *See Malek v. Brockbrader*, 190 F. App'x 613, 615 (10th Cir. 2006) (quoting *United States v. Rogers*, 960 F.2d 1501, 1509 (10th Cir. 1992) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.")). This means that although plaintiff has not sued defendant Nichols since 2005 and although plaintiff did not name either defendant Nichols or Spencer in his June 2008 case, the privity requirement is still met for all cases.

For res judicata to apply, therefore, only one more requirement needs to be met: the suit must be based on the same causes of action. This is where the analysis becomes a bit more complicated. The court has set forth the claims that plaintiff brought in previous suits above. It appears that the

claims in all of plaintiff's cases are strikingly similar. But the problem with applying res judicata across the board to these claims is twofold: (1) the two most recent state court cases were mandamus actions, which have a different standard for relief; and (2) while the claims are based on similar conduct, some of the allegations in the present case concern conduct that happened *after* plaintiff filed his previous cases.

The court's first concern is alleviated because the state court's decisions were based not only on the standards for mandamus relief, but also on the merits of plaintiff's claims. In State Case #2, the court stated, "plaintiff has no liberty interest in being released from the 'detox cell.'" In State Case #3, the court stated, "Plaintiff is not entitled to access to a law library" and "Defendants' actions did not interfere with Plaintiff's right of access to the courts." The court determines that, in light of these alternative holdings, the state court decisions should be entitled to full faith and credit.

As for the court's second concern, the timing of the events of which plaintiff complains dictates that only the following claims were raised previously or could have been raised previously: (1) defendants' mail handling in September 2007; (2) plaintiff's placement in segregation in December 2007 and May 2008; (3) the seizure of plaintiff's legal papers and law books in May 2008; (4) the "farming out" of plaintiff in December 2007, January 2008, and April 2008; and (5) failure to provide a legal library and/or legal assistance. The remainder of plaintiff's claims occurred after he filed State Case #3, making it impossible for plaintiff to have raised the claims in his previous cases. Four of these five claims, however, arise out of the same causes of action addressed in prior suits—namely, denial of due process and denial of access to the courts. The only claim that does not arise out of the same cause of action as a prior suit is the claim for improper handling of the mail. The other four claims are therefore barred by the doctrine of res judicata.

### 2. *Collateral Estoppel*

The court must next consider whether collateral estoppel precludes any of the remaining claims. For collateral estoppel to apply, the following conditions must be satisfied: (1) the issue previously decided must be identical with the one presented in the current action; (2) the party against whom the doctrine is invoked must have been a party or in privity with a party to the prior action; (3) the party against whom the doctrine is raised must have had a full and fair opportunity to litigate the issue in the prior action; and (4) the prior action must have been finally adjudicated on the merits. *See Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992) (citing *United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992)) (quoting *In re Lombard*, 739 F.2d 499, 502 (10th Cir. 1984)).

The second, third, and fourth elements are met as to all of the claims—plaintiff was a party in all of the prior cases; he had a full and fair opportunity to litigate the issues, even receiving trials in State Cases #2 and #3; and, as mentioned above, the prior actions were finally adjudicated on the merits, with the possible exception of State Case #1. But State Case #1 does not impact the outcome here.

That leaves only the question of which issues, if any, are identical to those in this action. The court determines that none of the issues raised in the past are identical to those in this action. While they may be similar, each issue involves a factual situation that varies with the incident. For example, while courts have found that plaintiff was not denied due process or access to the courts through his placement in segregation in December 2007 and May 2008, the circumstances surrounding his segregation in June or July 2008 differ from the circumstances previously considered. The court therefore determines that the doctrine of collateral estoppel does not bar any of plaintiff's claims.

### B. Qualified Immunity

Defendants alternatively argue that they are entitled to qualified immunity on all of plaintiff's claims. After the analysis above, the following claims remain for consideration of whether defendants are entitled to qualified immunity:

(1) Denial of access to the courts through the following actions:
  (a) December 2007 threat not to file legal actions;
  (b) Placement in segregation in June or July 2008; and
  (c) Confiscation of legal papers and law books June or July 2008, and July 29, 2008;
(2) Denial of due process through placement in segregation in June or July 2008;
(3) Improper handling of legal mail by opening mail outside of plaintiff's presence and holding it for several weeks in September 2007, Summer 2008, and October 2008; and
(4) Interference with confidential communication with counsel by monitoring plaintiff's conversations with his attorney on the phone and during visits.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008). The court can exercise its discretion in determining which qualified immunity prong to consider first: (1) violation of a constitutional right or (2) that the right was clearly established. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

### *1. Denial of Access to the Courts*

In *Bounds v. Smith*, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The Court clarified the scope of this right in *Lewis v. Casey*, holding that, to prevail on a claim that inadequate legal materials or assistance resulted in a denial of access to the courts, an inmate must establish that he incurred an "actual injury," i.e., that "the alleged shortcomings in the library or legal assistance program

hindered his efforts to pursue a legal claim." 518 U.S. 343, 351 (1996). An inmate might make such a showing by alleging "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known" or "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

A plaintiff who cannot show that he was hindered in bringing his claims or that he was otherwise injured by any alleged unconstitutional deficiencies in prison resources lacks standing to bring a claim of denial of access to the courts. *Bedford v. Sharp*, No. 96-6230, 1997 WL 413166, at *3 (10th Cir. July 23, 1997) (citing *Lewis*, 518 U.S. at 351; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996)). "[I]n instances in which a prisoner alleges that the seizure of legal materials has deprived him of his constitutional right of access to the courts—but does not allege a complete denial of access to legal resources—he must establish that he has been prejudiced by the defendant's actions in order to prevail." *Clemmons v. Davies*, No. 94-3268, 1996 WL 282283, at *4 (10th Cir. May 29, 1996) (citing *Green v. Johnson*, 977 F.2d 1383, 1390 (10th Cir. 1992); *Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1995); *Chandler v. Baird*, 926 F.2d 1057, 1062 (11th Cir. 1991)).

Defendants allege that plaintiff cannot show a constitutional violation because he cannot establish that he sustained an actual injury. This is essentially true, but the court does not even reach the constitutional question if the plaintiff lacks standing. Plaintiff has not alleged any facts showing that defendants' actions rendered him unable to file or otherwise pursue an actionable claim. He makes a conclusory allegation that he is "unable to file a habeas corpus to challenge his unlawful confinement in punitive segregation," but he has not alleged that as a result of defendants' actions,

-10-

he is time-barred or otherwise precluded from doing so. In any event, habeas relief is not appropriate for claims challenging conditions of confinement. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

When Judge Crow screened this case pursuant to 28 U.S.C. § 1915A, he expressed concern with plaintiff's conclusory allegations of prejudice. He advised plaintiff of the law in this area, and concluded, "the court reiterates that in order for plaintiff to be entitled to any relief, he will eventually need to prove actual injury, i.e., that he was impeded in the litigation of a non-frivolous case by acts of defendants." At that time, Judge Crow allowed the claim to proceed under the screening standards. But plaintiff now faces a different hurdle. He is now facing dismissal under the standards of *Twombly* and *Iqbal*. Yet plaintiff has not alleged prejudice with any more specificity than before. Under these standards, plaintiff lacks standing to bring this claim.

### *2. Segregation without Due Process*

A pretrial detainee like plaintiff may be placed in isolation to maintain prison discipline. A detention center has a legitimate interest in segregating individual inmates from the general population for nonpunitive reasons, such as where there is a threat to the safety and security of the institution. *Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992); *see also Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."). Moreover, "prison administrators should be accorded . . . wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. . . . '[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to

-11-

these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id.* at 547–48 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Here, there are two problems with plaintiff's due process claim. First, he makes no more than a conclusory allegation that his placement in segregation was punitive. He has not supported his allegations with any facts, rendering his claim deficient. Second, plaintiff's own complaint does not support his allegation that defendants' actions were punitive: plaintiff states that "an inmate [in protective custody] was found to have contraband under his mattress." Defendants attached the incident report, which reveals that the inmate found with contraband was plaintiff himself. Under these circumstances, the court determines that no constitutional violation occurred, and that defendants are entitled to qualified immunity on this claim.

### *3. Improper Handling of Legal Mail and Interference with Confidential Communication with Counsel*

Plaintiff's claims for opening and holding his legal mail and interfering with confidential communication with counsel can be categorized in two ways: (1) as additional claims for denial of access to the courts; and (2) as claims for deprivation of the right to freedom of speech. To the extent that plaintiff intends these claims to be additional claims for denial of access to the courts, they fail for the same reasons cited above: plaintiff has not demonstrated prejudice.

To the extent that plaintiff intends these claims to be free speech claims, the court cannot dismiss the claims at this time. Defendants have not addressed plaintiff's claims as free speech claims, and have not sought qualified immunity on them. The court therefore denies defendants' motion as to these claims. They are the only claims remaining for adjudication.

### C. Injunctive Relief

Defendants ask the court to deny plaintiff's request for injunctive relief. Plaintiff's request is

no longer viable as to any and all of the claims that the court has dismissed by way of this order. Defendants' request is therefore granted as to the claims dismissed. The request remains outstanding, however, as to the remaining claims in the case: the free speech claims for improper handling of legal mail and interference with confidential communication with counsel.

Because the court has dismissed the claims that are the subject of the Motion for a Preliminary Injunction filed on September 29, 2009 by plaintiff (Doc. 51), that motion is denied as moot.

**IT IS THEREFORE ORDERED** that defendants' Motion for Judgment on the Pleadings (Doc. 23) is granted in part and denied in part. The only claims remaining for adjudication in this case are plaintiff's free speech claims for improper handling of legal mail and interference with confidential communication with counsel.

**IT IS FURTHER ORDERED** that plaintiff's Motion for a Preliminary Injunction (Doc. 51) is denied as moot.

Dated this 14th day of October 2009, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**